A08A0757. ADAMS v. THE STATE.
(662 SE2d 782)

MILLER, Judge.

Pursuant to a negotiated plea agreement, Marion Adams pled guilty to a single count of cruelty to persons over the age of 65, in violation of OCGA § 16-5-100, for depriving his bedridden sister of adequate food, drink, and hygiene. He was sentenced under the First Offender Act (OCGA § 42-8-60 et seq.) to ten years probation and eighty hours of community service, and was ordered to pay a $2,000 fine and $15,000 in restitution to the victim. Adams subsequently filed a motion for reconsideration as to the amount of restitution he must pay, and the trial court denied the same. On appeal, Adams asserts that the trial court erred in (i) refusing to revise the amount of restitution ordered based on the factors set forth in OCGA § 17-14-10 and the victim's damages; (ii) requiring him to make restitution to a charitable fund, rather than the victim; and (iii) illegally increasing his sentence. Because the trial court failed to make written findings of fact required by the statute governing

---

restitution, we vacate the restitution order and remand the case for the issuance of a new order that includes the appropriate written findings.

Where a defendant appeals from an order of restitution, we determine whether the evidence was sufficient, under the preponderance of the evidence standard, to support that order, including the amount of restitution. *Crozier v. State*, 233 Ga. App. 831 (1) (506 SE2d 139) (1998). "Preponderance of evidence" is defined as "that superior weight of evidence upon the issues involved, which, while not enough to free the mind wholly from a reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other." OCGA § 24-1-1 (5).

So viewed, the evidence shows that for a period of several months, Adams took his sister's monthly retirement fund and social security checks and converted most of the money for his own use. Although he was supposed to be caring for his sister, Adams did not live with her, and went to her apartment only once a week. She was eventually discovered by medical personnel, who found her malnourished, dehydrated, and lying in unsanitary conditions. After receiving treatment at the hospital, the sister went to reside at The Presbyterian Home, a local nursing care facility.

At the time Adams entered his guilty plea, the trial court noted that restitution was a possible part of his sentence, but stated that it would review any relevant information submitted to it before setting the amount.

In his motion for reconsideration, Adams asserted that he was financially unable to pay $15,000 and requested that the court modify that amount to reflect the "severity" of his crime and his lack of a prior criminal history. At a hearing on that motion, however, Adams presented no evidence as to his financial status. Instead, he offered only the testimony of Thomas Rockenbach, Jr., the Chief Operating Officer of The Presbyterian Home. Rockenbach testified that the victim had a then-current balance of $13,740 owing on her account at The Presbyterian Home that would not be covered by Medicaid. He further explained that because of certain Medicaid regulations, any payments made directly to the victim's account would actually render her ineligible for future Medicaid benefits. The current account balance not covered by Medicaid would either be written off by The Presbyterian Home as a loss, or would be paid by the Caring Hands Fund, a charitable fund set up for the benefit of The Presbyterian Home. Rockenbach also stated, however, that any payments made directly to the Caring Hands Fund would not impact the victim's eligibility for Medicaid.

Following the hearing, the trial court issued an order requiring that Adams pay $15,000 in restitution to the Caring Hands Fund.

The trial court subsequently granted Adams' motion for an out-of-time appeal, and this appeal followed.

1. Adams first asserts that the trial court's restitution order must be reversed because it failed to comply with OCGA § 17-14-10. That statute requires a trial court to consider several factors in setting a restitution amount, including: the present financial condition of the offender and his dependents; their probable future earning capacity; the amount of the victim's damages; the dual goals of rehabilitation of the offender and restitution to the victim; any restitution previously made; the period of time the restitution order will be in effect; and any other factors the trial court deems appropriate. Any order of restitution must set forth written findings of fact as to each of these factors and "[f]ailure to do so renders the order deficient." (Footnote omitted.) *Nobles v. State*, 253 Ga. App. 814, 815 (560 SE2d 724) (2002).

The trial court's order of restitution here does not contain written findings of fact as to the factors set forth in OCGA § 17-14-10, and we therefore vacate the same and remand the case for the issuance of a new order that includes such findings. We note, however, that remand does not automatically entitle Adams to a new restitution hearing.

> If the trial court actually considered the required factors in its earlier restitution determination, but simply failed to reflect its findings in the original order, it can issue a new order with the appropriate written findings. If, however, the required factors were not considered, a new hearing may be required. On remand, therefore, the trial court must determine whether a new hearing is necessary.

(Punctuation and footnotes omitted.) *Steele v. State*, 270 Ga. App. 488, 490-491 (606 SE2d 664) (2004).

We now turn to Adams' remaining enumerations of error, because they present issues that are likely to arise on remand.

2. Adams claims that the amount of restitution he was ordered to pay violated OCGA § 17-14-9, because it exceeded the amount of the victim's damages. We disagree.

In support of his argument, Adams points to Rockenbach's testimony that the victim's balance at The Presbyterian Home was $13,740, and that this amount would either be written off by The Presbyterian Home or covered by the Caring Hands Fund. He therefore reasons that the victim has no damages for which she needs restitution. This argument, however, fails to apply the statutory definition of damages applicable in the restitution context.

For purposes of restitution, " '[d]amages' means all . . . damages

which a victim could recover against an offender in a civil action . . . based on the same act or acts for which the offender is sentenced. . . ." OCGA § 17-14-2 (2). The trial court below specifically found that "the circumstances giving rise to [the victim's] residence at The Presbyterian Home can be directly attributed to the actions of [Adams]," and Adams has not appealed this finding. The evidence showed that the victim originally owed The Presbyterian Home in excess of $17,000, but that the amount had been reduced because of Medicaid payments. Additionally, it appears that Adams converted at least $7,200 belonging to his sister for his personal use. Thus, in a civil action, the victim could have recovered approximately $25,000 in damages from Adams and, accordingly, the trial court could have required Adams to pay up to that amount in restitution. See former OCGA § 17-14-9 ("[T]he amount of restitution ordered may be equal to or less than, but not more than, the victim's damages.").

The mere fact that some of the victim's damages have been or may be paid by a third party, however, would not absolve Adams of civil liability for his conduct and, consequently, it does not absolve Adams of responsibility for making restitution. See *Crozier*, supra, 233 Ga. App. at 832 (2) ("It is clear that the victim would be able to recover the amount of all medical treatment related to [the offender's conduct] and/or that the medical service providers would be able to recover [in a civil action] for the expenses incurred in treating the victim for the injury related to [that conduct].") (footnote omitted).

3. Adams next asserts that the trial court erred by requiring him to make restitution to the Caring Hands Fund, instead of directly to his sister. Again, however, this argument ignores the relevant law.

Under OCGA § 17-14-2 (9), for purposes of restitution a "victim" is defined as any "[n]atural person or . . . [a]ny firm, partnership, association, public or private corporation, or governmental entity suffering damages caused by an offender's unlawful act. . . ." This definition of "victim" demonstrates that the purpose of restitution is not only to make the victim whole, but also to prevent the offender from shifting the costs of his conduct to third parties. Accordingly, a court may order an offender to make restitution to any third party who has incurred or will incur expenses as a result of his illegal acts. See *Crozier*, supra, 233 Ga. App. at 833 (2) (trial court authorized to require restitution be paid to those third parties that provided medical services to the individual victim); *Bridges v. State*, 208 Ga. App. 555, 556 (1) (431 SE2d 164) (1993) (restitution may be paid to either the victim or their insurance carrier). Here, the testimony of Rockenbach demonstrated that the Caring Hands Fund has incurred expenses as a result of Adams' conduct and therefore the trial court could properly order that restitution payments be made to it.

4. In his final enumeration of error, Adams asserts that the trial court's order requiring him to pay restitution to the Caring Hands Fund meant that such payments constituted a "fine," as opposed to restitution. Because the trial court had previously fined Adams $2,000 for his conduct, he claims that this increased "fine" represented an illegal increase in his sentence. As the discussion in Division 3 demonstrates, however, under the restitution statutes, the Caring Hands Fund represents a "victim" and any payments Adams makes to it constitute restitution. Accordingly, this enumeration of error is without merit.

In light of the foregoing, we vacate the restitution order and remand the case for the issuance of a new order, making the appropriate written findings of fact required under OCGA § 17-14-10. See *Nobles*, supra, 253 Ga. App. at 815.

*Judgment vacated and case remanded. Blackburn, P. J., and Ellington, J., concur.*

DECIDED MAY 23, 2008.

*John D. Holt*, for appellant.
*J. David Miller, District Attorney, Laura A. Wood, Assistant District Attorney*, for appellee.